414 So.2d 770 (1982)
Charles L. KELLY
v.
CITY OF NEW ORLEANS.
No. 81-C-3167.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.[*]
Joseph W. Thomas, & Belhia V. Martin, New Orleans, for plaintiff-applicant.
Robert R. Gisevius, Deputy City Atty., for defendant-respondent.
WATSON, Justice.[*]
The issue in this suit for workers' compensation benefits is whether corrective surgery on plaintiff's left shoulder was required as the result of employment related accidents. LSA-R.S. 23:1031.
On May 30, 1978, plaintiff, Charles L. Kelly, a City of New Orleans policeman, was riding in a patrol car which was hit by a motorcycle. He and his partner were on duty, answering an emergency call, when the motorcycle struck Kelly's side of the car *771 with a heavy impact. His left shoulder dislocated and then pushed back into place, leaving severe pain. Dr. D. S. Condie, an expert general surgeon, treated Kelly's shoulder with diathermy, muscle relaxants, sedatives, analgesics and heat. According to Dr. Condie, Kelly's ligaments were damaged as a result of the automobile accident, and the accident, combined with an earlier injury as a police cadet, increased the possibility of future dislocations.
Kelly reported to the New Orleans Police Department, on May 31, 1978, that he had severe pain in the left shoulder and a prior injury to the same shoulder at the police academy. The report indicates no preexisting disability. Two "Injury Reviewing" police officers determined that Kelly was entitled to compensation benefits. Kelly missed work for four and one half weeks, from June 4 to July 7. However, no compensation or medical expenses were paid by the City.
On July 7, 1978, Dr. Condie released Kelly for light or limited duty at a desk job. However, Kelly testified he was required to resume full duty at that time. Dr. Condie recommended activity and exercise, but did not want Kelly to engage in the full duties of a police officer. On July 14, 1978, at a regular appointment with Dr. Condie, Kelly reported that he had again dislocated and reduced his shoulder while swimming. He was referred to an orthopaedic surgeon. According to Dr. Condie, the swimming accident exacerbated Kelly's condition. Kelly continued at his job until July 22, missed two days and then returned to work.
Dr. C. Roy Marrero, an orthopaedic surgeon, saw Kelly on July 20, 1978. Kelly stated that he had dislocated his shoulder while in police training, had another dislocation in the automobile-motorcycle accident, and then the swimming dislocation. According to Dr. Marrero's examination and Kelly's history, Kelly had a recurrent dislocating left shoulder. The ligaments in the shoulder had been weakened. If a shoulder dislocates twice in a young individual, Dr. Marrero recommends surgery. In Kelly's age group there would otherwise be a seventy-five percent chance of recurrence. Dr. Marrero operated on Kelly's shoulder at Touro Infirmary on August 23, 1978, moving a piece of bone and inserting a screw. The hospitalization cost $1,234.30 and the surgeon's fee was $678. Kelly used sick and annual leave from August 23 until October 12 and authorized leave without pay from then until December 2, 1978, when he apparently returned to work.
Kelly was returned to full duty by Dr. Marrero on January 30, 1979. He has a ten percent permanent disability of the shoulder as a result of the surgery.
The trial court concluded that Kelly was entitled to four and one half weeks compensation at $95 per week for the time lost after the patrol car accident. Also awarded was the $315 medical bill of Dr. Condie and restoration of the sick leave Kelly had utilized in lieu of compensation. The City was cast for penalties, costs and attorney's fees of $750. Benefits for the surgery, Dr. Marrero's fee, and the time lost from work as a result of the hospitalization were denied.
The Court of Appeal concluded that the City was not liable for Dr. Condie's bill because that doctor is a salaried employee of the City. Since the City had misplaced the accident report about Kelly's injury at the police academy, the Court of Appeal remanded for a determination of whether or not there was a connection between that injury and the subsequent shoulder problem. Appellate attorney's fees of $500 were awarded. Kelly v. City of New Orleans, 384 So.2d 546 (La.App. 4 Cir. 1980).
Dr. Condie had testified that he does not have a contract with the City, and his salary from the police department does not cover his office expenses. Police personnel come to him as private patients, and are free to go to other physicians.
On remand, Kelly's injury report from the police academy accident, dated February 14, 1977, was introduced in evidence. It relates: "while taking the police agility test, I was injured, when crawling through a window. I slip down in the mud and fell on my left shoulder, causing my left shoulder *772 to separate ... left shoulder was dislocated." After that injury, Kelly went to Charity Hospital.
A Charity Hospital record corroborates this report. On February 14, 1977, Kelly was diagnosed as having a dislocation of the left shoulder. He was advised of the possibility of redislocation, and the shoulder was put in a sling. A follow-up report on March 2, 1977, reported that the patient was doing well but still had some pain.
After remand, the trial court did not award any further benefits. After a second appeal, the judgment of the trial court was affirmed, with one judge dissenting. 406 So.2d 759 (La.App. 4 Cir. 1981). A writ was granted to review the judgment. 410 So.2d 761 (La., 1982).
The trial court, after remand, stated:
"The evidence is that he [Kelly] has had similar separations, at least one, which was not work-related at all. The plaintiff's condition is anatomical and it relates back to his birth. He was born with a defective shoulder that could be easily separated. On the two occasions on which his shoulder separated while at work, he has been compensated by the City. There is no requirement in the workmen's compensation statutes that an employer incur the expense of correcting birth defects in injured workmen."
These statements and conclusions are totally unsupported by the evidence in the record and are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1979),
Kelly had a shoulder separation while testing for the police academy and a subsequent shoulder dislocation in a patrol car in the course and scope of his employment. There is no evidence of a birth defect or any accidents prior to his police employment. Even if Kelly had a defective shoulder from birth, a work-related accident aggravating that condition would be compensable. Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La., 1978). The undisputed medical evidence is that the first two injuries predisposed Kelly to the swimming injury. The latter occurred while Kelly was still partially disabled and under treatment by Dr. Condie. An aggravation of a work-related injury is compensable even if it occurs away from work. Bolden v. Georgia Casualty & Surety Co., 363 So.2d 419 (La., 1978); Stewart v. Hospitals Affiliates International, Inc. of Baton Rouge, 404 So.2d 944, 945 (La., 1981). The surgical correction by Dr. Marrero was required because of Kelly's employment accidents.
Kelly is also entitled to benefits for a ten percent permanent disability of the left shoulder, which restricts his arm motion. Calculation of this amount would be based on two hundred weeks, loss of use of an arm, under the schedule of LSA-R.S. 23:1221; but the percentage of loss would not equal the minimum compensation benefits under LSA-R.S. 23:1202. Therefore, plaintiff is entitled to the minimum. Slocum v. LaMartiniere, 369 So.2d 201 (La. App. 3 Cir. 1979), writ denied 372 So.2d 569.
The City produced no evidence that the services rendered by Dr. Condie to Kelly are among those for which Dr. Condie receives a salary from the City. Therefore, the City must pay Dr. Condie's bill for Kelly's treatment.
While there was no error by the trial and appellate court in awarding penalties and attorney fees in the original judgment, the City was not clearly arbitrary in failing to pay benefits and expenses accruing by reason of the surgery.
For the foregoing reasons, the judgment of the trial court is affirmed insofar as it awarded compensation benefits for four and a half weeks, Dr. Condie's medical bill, penalties, and attorney's fees of $750. The additional award of $500 appellate attorney's fees is affirmed.
However, the judgments of the trial and appellate courts after remand are reversed. It is ordered that there be additional judgment in favor of plaintiff, Charles F. Kelly, and against the defendant, City of New Orleans, as follows:
(1) Compensation benefits from July 22 through July 24, 1978;

*773 (2) Compensation benefits from August 23, 1978, through December 2, 1978;
(3) All related medical expenses including, but not limited to, the bills of Dr. Condie, Dr. Marrero, and Touro Infirmary;
(4) Restoration of all sick and annual leave used during the compensable periods; and,
(5) Minimum weekly compensation benefits for two hundred weeks. (LSA-R.S. 23:1202)
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[*] Lemmon, J., recused.
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit participated in this decision in place of Lemmon, J., recused.